# IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION
## 1:07cv385

| | | |
|---|---|---|
| **WAYNE K. PURCELL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **MEMORANDUM AND** |
| **Vs.** | ) | **RECOMMENDATION** |
| | ) | |
| **MISSION HOSPITALS,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

**THIS MATTER** is before the court upon defendant's Motion for Summary

Judgment.  On September 2, 2008, the undersigned issued an Order in accordance

with <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), advising plaintiff, who is

proceeding *pro se*, that he is required to respond to such motion and explaining to

plaintiff the method for filing evidentiary material.  <u>See</u> *Roseboro* Order (Docket

Entry #13).   On September 18, 2008, plaintiff filed a document captioned as

plaintiff's "Motion for Summary Judgment."  Docket Entry #14.  Inasmuch as the

time had run for filing dispositive motions, the undersigned has deemed such motion

to be plaintiff's timely filed Memorandum in Response to defendant's Motion for

Summary Judgment.  Having carefully considered defendant's Motion for Summary

Judgment, plaintiff's Response, and defendant's Reply,  and having reviewed the

pleadings, the court enters the following findings, conclusions, and Recommendation.

## FINDINGS AND CONCLUSIONS

### I.      Nature of the Claim

In this action, plaintiff, who is African-American, contends that his employment as a chaplain at defendant's hospital was terminated because of his race. Plaintiff brings such claims under Title VII of the Civil Rights Act of 1964 and under 42, United States Code, Section 1981, as that section was amended by the Civil Rights Act of 1991. It appearing that discovery has closed and that the issues have been fully and adequately briefed, the undersigned enters the following findings, conclusions, and Recommendation that summary judgment be granted and that this action be dismissed in its entirety with prejudice for the reasons herein explained.

### II.     Summary Judgment Standard

On a motion for summary judgment, the moving party has the burden of production to show that there are no genuine issues for trial. Upon the moving party's meeting that burden, the non-moving party has the burden of persuasion to establish that there is a genuine issue for trial.

> When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. In the language of the Rule,

the nonmoving [sic] party must come forward with "specific facts showing that there is a *genuine issue for trial*." Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial."

Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted; emphasis in the original) (quoting Fed. R. Civ. P. 56). There must be more than just a factual dispute; the fact in question must be material and readily identifiable by the substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

By reviewing substantive law, the court may determine what matters constitute material facts. Anderson, supra. "Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." Id., at 248. A dispute about a material fact is "genuine" only if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." Id. The court must credit factual disputes in favor of the party resisting summary judgment and draw inferences favorable to that party if the inferences are reasonable, however improbable they may seem. Cole v. Cole, 633 F.2d 1083, 1092 (4th Cir. 1980). Affidavits filed in support of a defendants' Motion for Summary Judgment are to be used to determine whether issues of fact exist, not to decide the issues themselves. United States ex rel. Jones v. Rundle, 453 F.2d 147 (3d Cir.

1971). When resolution of issues of fact depends upon a determination of credibility, summary judgment is improper. <u>Davis v. Zahradnick</u>, 600 F.2d 458 (4th Cir. 1979).

In determining whether a genuine issue of material fact exists, the admissible evidence of the non-moving party must be believed and all justifiable inferences must be drawn in his or her favor. <u>Anderson</u>, <u>supra</u>, at 255. In the end, the question posed by a summary judgment motion is whether the evidence "is so one-sided that one party must prevail as a matter of law." <u>Id.</u>, at 252.

## III.    Factual Background

### A.    Plaintiff's Employment at the Hospital

Plaintiff was employed by defendant as a chaplain in its Pastoral Care Department from May 6, 2002, until his employment was terminated August 20, 2004. Plaintiff's Dep., at pp. 22, 77. During the plaintiff's employment, the organizational structure of such department had Mark Snyder serving as director until October 2002, when Steve Kirkland took over in such position. <u>Id.</u>, at 22-24. Chaplain David Nard was plaintiffs direct supervisor beginning in February 2003 and continuing throughout his employment. <u>Id.</u>, at 23. Another chaplain, Dorri Sherrill, also supervised plaintiff, although her primary responsibility was supervision of the night shift chaplains at St. Joseph. <u>Id.</u>, at 23-24. The duties of a chaplain included responsibility for specific units of the hospital, which was intended to avoid a

piecemeal approach to serving the spiritual needs of patients and staff.  Id., at 30-31.

### B.    First Warning: Failure to Meet

In November 2003, unit responsibilities were reassigned.  Id., at 30; Affidavit of David Nard, at ¶ 4. Plaintiff and other chaplains who were responsible for new or different units were to meet with the chaplain who previously had responsibility for the unit to learn about the newly assigned units and to otherwise facilitate the transition. Id.  Plaintiff failed to complete this in a timely manner and he changed unit assignments without the authorization of Director Kirkland. Plaintiffs Dep., at  p. 32; Nard Aff., at ¶  4.  Both plaintiff and Chaplain Jeff Brooks (Caucasian) were issued a first warning for their actions. Plaintiffs Dep., at pp. 32-33; Nard Aff., at ¶ 4. Plaintiff testified that he does not believe that this First Warning was issued to him because of his race.  Plaintiffs Dep., at  p. 33.  He admits it was "because we [plaintiff and Brooks] failed to follow proper procedure." Id.

### C.    Written Warning: Illegal Parking

Plaintiff received a written warning on November 19, 2003 for not parking in a designated employee parking lot and  for  his  interactions  with  his  supervisor concerning such matter, including making misrepresentations when questioned about where he was parked. Plaintiffs Dep., at pp. 33-34; Nard Aff., at ¶ 5 Instead of telling Chaplain Nard that he had in fact been parked illegally, plaintiff decided to "play

with" his supervisor by denying it was his car and by asking if the supervisor had seen the license plate and could identify it as belonging to the plaintiff, among other "playful" questions and comments. Plaintiff's Dep., at pp. 35-36. When pressed further on the issue, plaintiff finally admitted that he had been untruthful and that he had parked in an unauthorized area. Plaintiffs Dep., at pp. 35-37; Nard Aff., at ¶ 6. Plaintiff does not believe that this warning was given to him because of his race. Plaintiffs Dep., at p. 37.

### D.     Counseling: Attention to Detail

In June 2004 Director Kirkland and Chaplain Nard met with plaintiff to provide coaching and counseling on a variety of issues including one issue that recurred throughout plaintiffs employment - his lack of attention to detail. Plaintiffs Dep., at pp. 4. Plaintiff characterizes this coaching as a "warning" but admittedly has no reason to believe he received this "warning" on the basis of his race. Plaintiffs Dep. pp. 47-48. As a result of this counseling, plaintiff was advised that while he did not have to agree with departmental policies and protocol he and all chaplains had to abide by them and that absent compliance further disciplinary action would result. Plaintiffs Dep., at p. 47.

### E.     Final Warning: Unauthorized Access to a Patient's File

On June 22, 2004, plaintiff was given a Final Warning and placed on one year's

probation for a serious breach of defendant's policy governing confidentiality, privacy and security. Plaintiffs Dep., at pp. 65-68. Plaintiff admittedly accessed, without authorization or a need to know, the medical records of a well-known public figure who was being treated in the Hospital. Plaintiffs Dep., at pp. 66-67, 69. Plaintiff admittedly had no legitimate reason to access the patient's confidential medical records. Plaintiffs Dep., at p. 68. Plaintiff admits that he was in violation of defendant's privacy policy and that he was trained on compliance with the privacy policy and the Health Insurance Portability and Accountability Act ("HIPAA"). Plaintiffs Dep., at pp. 66, 69. In addition to being placed on probation. Plaintiff was warned that further disciplinary action would result in his termination. Plaintiffs Dep., at p. 73.

Other persons, not in plaintiff's protected class, received disciplinary action for accessing the prominent patient's medical records. Chaplain James Garrison (Caucasian) along with other employees also received a final warning for the same offense conduct as plaintiff. Plaintiffs Dep., at pp. 76-77. Plaintiff testified that it is his belief that he was issued his final warning because of his race and that he should not have been disciplined at all. Plaintiffs Dep. pp. 69-71, 74, 77. It is undisputed that another Caucasian chaplain received an identical warning for the same offense conduct.

## F.    Termination: Failure to Communicate

As discussed above, plaintiff had received previous warnings concerning the necessity of following hospital and department policy and protocol. Plaintiff was the back up chaplain for the weekend of August 13, 2004, through August 15, 2004. Plaintiffs Dep., at  p. 78.  The department protocol required that the back up chaplain contact the chaplain on duty to alert them as to who was serving as back up chaplain, how the back up could be contacted, and to discuss any issues that could possibly involve the back up chaplain. Plaintiffs Dep., at  pp. 80-81.  Clearly, plaintiff understood such protocol.

It is equally undisputed that plaintiff did not tell the on duty chaplain on Friday, August 13, 2004, that he was his back up; rather, he assumed the chaplain knew that he was the back up. Plaintiffs Dep., at  pp. 78-79. Plaintiff admits that he failed to contact the chaplain on duty per departmental protocol on Saturday, August 14, 2004, and on Sunday, August 15, 2004.  Plaintiff s Dep., at pp. 78-79, 81.  Chaplain Nard was the chaplain on duty on Sunday, August 15, 2004.  After Plaintiff failed to call in per protocol, Chaplain Nard attempted several times to contact him. Nard Aff., at ¶ 9. Plaintiff admitted that at the time he knew that Chaplain Nard had attempted to call him at least once, Plaintiff's Dep., at  p. 80, but when asked why he did not respond to Chaplain Nard, plaintiff testified that "I didn't respond . . . it was just

David Nard calling." Plaintiffs Dep., at p. 79. It is undisputed that Chaplain Nard was plaintiff's supervisor at the time. Plaintiff does not contend either that he was unaware of the protocol or that he was not in violation. Plaintiffs Dep., at pp. 80-82.

According to a decisionmaker, Chaplain Nard, since Plaintiff had shown no significant improvement in following protocol, the hospital terminated his employment effective August 20, 2004. Nard Aff., at ¶ 10. Plaintiff unsuccessfully appealed the decision to terminate his employment. Plaintiffs Dep., at pp. 102-104.

Plaintiff testified in his deposition that he did not believe that the decision upholding his termination was made on the basis of his race. Plaintiffs Dep., at pp. 104, 106-107. Plaintiff then testified later in his deposition that the decision to uphold his termination was based on his race, but admitted that he has no evidence to support his belief. Plaintiff s Dep., at p. 114. Plaintiff's position as chaplain was later filled by a person who is also in the same protected class.

## G. Denial of Application for Re-Employment

It is undisputed, even by plaintiff, the he was not eligible for rehiring by defendant. Plaintiffs Dep., at p. 118; Affidavit of Elizabeth Buchanan, at ¶ 5.

Plaintiff applied for re-employment as a part-time chaplain with defendant on December 15, 2006. Plaintiffs Dep., at pp. 115-116, 118. On December 17, 2006, defendant sent plaintiff an email informing him that he was not eligible for rehire and

therefore his application for employment had not been referred for consideration. Plaintiffs Dep., at p. 118, Plaintiff's Dep. Ex. 22.

## IV.    Discussion

### A.    Claims Asserted By Plaintiff

Plaintiff's Complaint is brought under both Title VII and Section 1981, as discussed above. Reading the *pro se* Complaint in a light most favorable to plaintiff, he is asserting causes of action for a Hostile Work Environment, Disparate Treatment, and Retaliation under both Title VII and Section 1981.

### B.    Plaintiff's Title VII Claims for Hostile Work Environment (First Cause), Disparate Treatment (Third Cause), and Retaliation (Fifth Cause) are Time Barred

Plaintiff filed this action on October 18, 2007. The last possible act that could conceivably support a claim for a hostile work environment or disparate treatment must have occurred not later than August 20, 2004, the date plaintiff's employment was terminated. Nard Aff., at ¶ 10.

As to the breadth of plaintiff's Title VII claims, plaintiff filed two EEOC Charges of Discrimination against defendant. The first charge was filed November 19, 2004, and alleged that plaintiff was "harassed, disciplined and discharged because of his race, Black, and in retaliation for complaining about discrimination in the workplace." Plaintiffs Dep., at pp. 123-24; Plaintiffs Dep. Ex. 24. The EEOC

issued a tight-to-sue- letter on August 25, 2005, which advised plaintiff that he had 90 days to file a complaint in this court. Plaintiffs Dep. Ex. 25. This action was filed more than <u>two years</u> after such right-to-sue letter was issued, making all of plaintiff's Title VII claims concerning his discharge and the actions leading up to such discharge time barred. 42 U.S.C. § 2000e-5(f)(l). Title VII creates a ninety-day statute of limitations in which an individual may file a claim. <u>Watts-Means v. Prince-George's Family Crisis Ctr.,</u>7 F.3d 40, 42 (4th Cir. 1993). Plaintiffs First (Hostile Work Environment), Third (Title VII Disparate Treatment) and Fifth (Title VII Retaliation) Causes of action, and plaintiffs allegations in paragraphs 2, 3, 4 and 5 of his Complaint relate to his employment and the termination of his employment in 2004 and were the subject of his 2004 EEOC Charge. As such, these claims are time barred.

The undersigned will, therefore, respectfully recommend that plaintiffs First, Third, and Fifth Causes of Action be dismissed with prejudice as time barred.

### C.     Section 1981 Hostile Work Environment (Second Cause)

Plaintiff's Section 1981 cause of action for a hostile work environment is not time barred inasmuch as a Section 1981 claim is not within the purview of the EEOC

and there is a four year period of limitation on Section 1981 claims.[1]  <u>Jones v. R.R. Donnelly and Sons Company</u>, 541 U.S. 369 (2004).

In this claim, plaintiff alleges that he was harassed by having to "adhere to unwritten rules" by "being accused of harassing 'unnamed' females" and by being asked about his wife and mother among as well as other perceived injustices. Complaint, at ¶ 2. Reading the Complaint in a light most favorable to plaintiff, he appears to be contending that the corrective actions he received were a form of harassment, although he admits in his deposition that none of the corrective actions (other than his termination) were racially motivated.

While admitting that the corrective actions were not racially motivated and that such discipline resulted from his own improper conduct, plaintiff appears to argue that the corrective actions he received were part of a pattern or practice of harassing behavior directed toward him, specifically:

(1)     being required to sign in when reporting to work;

(2)     being forced to adhere to unwritten rules;

(3)     having supervisors reprimand him when he parked in "'unacceptable' areas" and not reprimanding others that were parked next to plaintiff;

---

[1]     To the extent that plaintiff is alleging any claims under § 1981 that predate October 18, 2003, such claims would be time barred by Section 1981's four year statute of limitations.

(4) being accused of harassing "'unnamed' females"; and

(5) being questioned about his personal life, to wit, the relationship with his mother and wife.

Complaint, at ¶ 2.

To prove a *prima facie* case of hostile work environment based racial harassment, it is plaintiff's burden to show this court that: (1) there was unwelcome harassment; (2) the harassment was based on race; (3) the harassment was so severe or so pervasive that it altered the conditions of employment and created an abusive atmosphere; and (4) there is some basis for imposing liability on the employer. Causey v. Balog, 162 F.3d 795, 801 (4th Cir. 1998). In determining if the third element of the *prima facie* case is met, the frequency and severity of the harassment, whether it was physically threatening or humiliating, whether it reasonably interfered with work performance, and whether it resulted in physical harm are all considered. Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993). Severity is judged from the perspective of a reasonable person in plaintiffs position, considering all the circumstances. Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81 (1998).

The first category of alleged harassment is "unwritten rules." Plaintiff testified that "they changed the rules" presumably in an attempt to harass him. Plaintiffs Dep., at p. 141. When questioned about the so-called "changed rules," plaintiff was unable

to come up with any rule that had been changed to harass him. According to plaintiff, the unit change described above was a changed rule which he admits to not following. Plaintiffs Dep., at p. 141. There is absolutely no evidence, however, that the change in unit assignment was intended or in fact caused any "harassment" of plaintiff on the basis of his race. The evidence is clear that the change applied to all chaplains, as well as the requirement for all chaplains to meet to that continuity in services would be assured. The only adverse event that occurred as far as plaintiff was concerned was the corrective action taken when he failed to meet, which is precisely the same corrective action that was taken as to a Caucasian chaplain for identical misconduct.

Plaintiff's next contention concerning parking clearly does not amount to a changed rule. Plaintiffs admitted in his deposition that where he was supposed to park was not a rule change designed to harass him. Plaintiffs Dep., at p. 142.

Plaintiff cannot argue that defendant's privacy policy was a rule change inasmuch as such rule is clearly mandated by HIPPA. No evidence has been produced that such supposed unwritten or changed rules were an effort to harass him on the basis of his race.

Plaintiff also claims in his Complaint that he was harassed when he was "accused" of harassing some unknown female. It is undisputed that defendant had received a complaint that a black chaplain had sought a young lady's phone number

and had asked her out. Plaintiffs Dep., at p. 52. Plaintiff admits that no one accused him of anything. Plaintiffs Dep., at p. 53. It is equally undisputed that Kirkland and Chaplain Nard asked plaintiff if he had asked out the young lady who had complained, since he was the only black chaplain at the hospital. Plaintiffs Dep., at pp. 52-53. Plaintiff was not disciplined in any way as a result of the unsubstantiated allegation. Plaintiffs Dep., at p. 55. Plaintiff testified that he felt "singled out" by the question apparently ignoring the fact that the complaint was leveled against a black chaplain and that he was the only black chaplain on staff at the time. Such alleged conduct simply does not amount to harassment in any sense of the word.

Plaintiff further claims that it was harassment for Chaplain Nard to have asked him about his mother and wife. Complaint, at ¶ 2; Plaintiffs Dep., at p. 175. In his deposition, however, plaintiff could not recount any specific instance of anyone asking about his wife. Plaintiffs Dep., at pp. 178-179. It is undisputed that at the time of the inquiry, plaintiffs mother was sick in New Jersey and he wanted to visit her. Plaintiffs Dep., at p. 179. In the course discussing the need for time off to be with his mother, Chaplain Nard - -plaintiff's supervisor - - asked plaintiff about his relationship with his mother. Such question was apparently offensive to plaintiff because Chaplain Nard lacked the "credentials" to ask such a question. Plaintiffs Dep., at p. 175. Plaintiff testified that such inquiry lead him to conclude that

Chaplain Nard's inquiry was indicative of the fact that "he did not respect me as a person, to want to know what relationship I had with my mother when I'm asking time off because she's sick." Plaintiffs Dep., at p. 176. Plaintiff's logic is strained when viewed from the perspective a reasonable person inasmuch as an inquiry such as "Are you close to your mother?" is well within the realm of appropriate and polite inquiry from an employer confronted with the news that an employee's mother is sick and that time away from work is needed to care for such parent.

Considering all the evidence of record, plaintiff has come forward with no probative evidence upon which a reasonable person could conclude that he was being harassed under these circumstances. The undersigned will recommend that plaintiffs Section 1981 claims of racial harassment be dismissed with prejudice.[2]

### D.    Section 1981 Cause of Action for Disparate Treatment (Fourth Cause)

### 1.    Disparate Discipline

Reading the Complaint in a light most favorable to plaintiff, plaintiff contends that he subject to disparate disciplinary treatment or corrective actions while employed by defendant.

_____

[2]    Inasmuch as plaintiff's Title VII claims would have been reviewed under an identical analytical framework if they had been timely submitted, the undersigned will recommend in the alternative that plaintiff's mirror Title VII claim be dismissed for the same reasons.

To make out a *prima facie* case of disparate discipline, plaintiff must allege and then come forward with probative evidence that: (1) he is a member of a protected class; (2) the prohibited conduct in which he engaged was comparable in seriousness to employees outside the protected class; and, (3) the disciplinary measures enforced against him were more severe than those enforced against other employees who committed comparable offenses. Gray, supra, at 778. In essence, plaintiff must prove that other employees similarly situated to plaintiff violated defendant work rules and that the violations were of comparable seriousness. Id.

Plaintiff cannot make out the second and third elements of his *prima facie* case. Plaintiff was first disciplined for failing to appropriately handle the transition of unit assignments and for not communicating that he and another chaplain had swapped assignments. Plaintiff admits that this disciplinary action was not because of his race and he acknowledges that the other chaplain involved, who is Caucasian, was similarly disciplined. Thus, there is no disparate treatment with respect to this corrective action.

Plaintiff also received a written warning for his failure to park in employee parking and for being untruthful when questioned about his parking. Plaintiff admitted at his deposition that this written warning was not issued to him due to his race. Plaintiff does, however, attempts to compare himself to supervisor Dorri

Sherrill, who plaintiff claims was parked in the same patients-only parking lot, and that she too should have been disciplined. Such comparison does not meet the threshold requirement of similar situations: it is undisputed that Chaplain Sherrill was parked in the Heart Tower parking deck very briefly in preparation for a meeting at MAHEC, which shares the parking deck with defendant, while plaintiff was parked in the deck while performing his normal duties as a chaplain after having been warned previously, including just the day before, that he was not to park in the Heart Tower deck but instead should park in employee parking. Nard Aff., at ¶ 6. Further, there is no evidence that Chaplain Sherrill lied about where she had parked when confronted by a supervisor. This evidence is, therefore, not probative on this claim.

Plaintiff also takes issue with his being issued a Final Warning and placed on probation after violating the hospital's privacy policy. The evidence is undisputed that a number of employees committed the same violation and received the same final warning, including a Caucasian chaplain.

As to the disciplinary action that resulted in his termination, to wit, the failure to follow policies concerning communications between a chaplain and a back-up chaplain, plaintiff admits that he has no evidence that such termination was based on his race or was in any way discriminatory. At most, he simply feels that he was treated differently than other employees outside the protected class. Plaintiff has no

evidence that defendant's reasons for its termination of his employment - - his refusal, inability or unwillingness to follow hospital and departmental policies, procedures and protocol, even while on probation after a final warning - - are not true and are merely pretext for racial discrimination.

### 2. Disparate Discharge

Plaintiff may also be claiming that he was discharged from his employment due to his race. To establish a *prima facie* case of discriminatory discharge, plaintiff has to establish that: (1) he is a member of a protected class; (2) he suffered an adverse employment action; (3) he was performing his duties at a level that met his employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or was filled by similarly qualified applicants outside the protected class. <u>Miles v. Dell, Incorporated</u>, 429 F. 3d 480, 485 (4th Cir. 2005). Plaintiff has no evidence upon which a jury could find in his favor on either the third or fourth elements.

As to the fourth element, plaintiff position was filled by Martha Brown, who like plaintiff is an African-American. Nard Aff., at ¶ 11. None of the exceptions noted by the appellate court appear to apply to this case. <u>Miles</u>, <u>supra</u>, at 488-89.

As to the third element, plaintiff has not demonstrated that he was performing his duties at a level that met defendant's legitimate expectations at the time of his

termination. While plaintiff's skills as a chaplain were not the issue, plaintiff' ability to follow work rules was central to his termination. Plaintiff's Depo. Exs. 2 & 5. Plaintiff's progression through the disciplinary procedures at the hospital prove the opposite, which is that plaintiff was not meeting defendant's legitimate business expectations concerning compliance with hospital policies, procedures, and protocols.

* * *

The undersigned will, therefore, recommend that the fourth cause of action be dismissed with prejudice.[3]

### E.      Section 1981 Cause of Action for Retaliation (Sixth Cause)

The elements of a cause of action for retaliation are that: (1) plaintiff engaged in protected activity; (2) the employer took a material adverse action against plaintiff; and (3) the employer took the adverse action because of the protected activity. Burlington N. & Santa Fe Rv. v. White, 548 U.S. 53, 67-68 (2006); Holland v. Wash. Homes, Inc., 487 F. 3d. 208, 218 (4th Cir. 2007). In addition, plaintiff must have had a reasonable and good faith belief that the behavior complained of was unlawful. Clark County School Dist. v. Breeden, 532 U.S. 268 (2001).

---

[3]      Inasmuch as plaintiff's Title VII claims would have been reviewed under an identical analytical framework if they had been timely submitted, the undersigned will recommend in the alternative that plaintiff's mirror Title VII claim be dismissed for the same reasons.

In his sixth cause of action, plaintiff claims that he was not rehired by defendant when he reapplied in 2006 in retaliation for having filed his 2004 EEOC Charge of Discrimination. Plaintiffs Dep., at pp. 123-124. Plaintiffs filing of an EEOC Charge in 2004 is protected activity and he was not referred for an interview or offered employment upon his re-application.

Turning to the third element of a *prima facie* case, plaintiff does not establish a causal connection between his protected activity and not being offered a job. There is no close temporal proximity between the protected activity in 2004 and the adverse action in 2006. Further, in between such dates defendant had received a favorable outcome in such administrative charge in 2005. <u>Clark County School Dist.</u>, <u>supra</u>, at 273-74.

Further frustrating matters for plaintiff is his own admission that he has no evidence whatsoever that he was not rehired because he filed an EEOC Charge of Discrimination. Plaintiffs Dep., at pp. 123, 125. Instead, the only relevant evidence of record is that plaintiff was not eligible for rehire due to his employment record with defendant.

Reading the Complaint in the broadest possible manner, plaintiff may also be alleging a claim for retaliation based on "resisting" discrimination in the workplace. Plaintiff further claims that he "complained of and resisted Defendant's discriminatory

conduct and treatment." Complaint, at ¶ 4. This claim would be distinct from a claim that defendant retaliated against him for filing an EEOC grievance, and would harken to some sort or protest, resistence, or standing up for others who were being subjected to discrimination in the hospital. Plaintiff never filed an internal complaint of harassment or discrimination on his own behalf or on behalf of others during his tenure. It is undisputed that defendant had in place both a harassment policy and a procedure for filing grievances, as well as the fact that plaintiff had been trained on the policy and understood its contents. Plaintiffs Dep., at pp. 130-131, 135; Plaintiff's Dep. Exs. 26 & 27. Plaintiff claimed at his deposition that he did not make a complaint under Defendant's policy because doing so would mean he would be living on "borrowed time." Plaintiffs Dep., at pp. 131-132. While plaintiff attempts to excuse his failure to complain, such rationale does not provide him with standing to assert that he was retaliated against for resisting discrimination perpetrated against either himself or others when he fact he made no such grievances. Plaintiff, in fact, is aware of no employee who was ever terminated for filing a complaint of discrimination or harassment under defendant's policy prohibiting such conduct. Plaintiffs Dep., at p. 136. None of the meetings plaintiff had with supervisors or management concerning his re-employment could conceivably amount to resisting discrimination inasmuch as they were simply concerned with plaintiff's prospects for

re-employment in light of the disciplinary actions his record reflected.

The undersigned will, therefore, recommend that the sixth cause of action be dismissed with prejudice.[4]

## V.    Conclusion

The court has carefully considered the evidence presented, including the materials submitted by plaintiff in support of his response.  To the extent that plaintiff has attempted to submit declarations that contradict his own testimony, such materials have been set aside.  Plaintiff has also presented a great deal of material that is not only inadmissible, but which appears to have little probative value.  At the very heart of all of plaintiff's claims is whether his race or his invocation of laws designed to protect employees from racial discrimination played any part in defendant's decision making process as to employee discipline, termination, and re-employment.  It is plaintiff's burden to come forward with evidence upon which a jury could find in his favor on these claims, and evidence that amounts to speculation, conjecture, or feelings on the part of plaintiff is simply not enough.  The reason such evidence is inadmissible is traceable to the importance of the laws invoked - - it simply would

---

[4]     Inasmuch as plaintiff's Title VII claims would have been reviewed under an identical analytical framework if they had been timely submitted, the undersigned will recommend in the alternative that plaintiff's mirror Title VII claim be dismissed for the same reasons.

diminish the importance of racial discrimination laws for a jury to base its decision as to whether an employer committed unlawful discrimination on speculation or hunches. Speculation and conjecture raise a mere possibility of discrimination rather than the reasonable probability which is necessary to support an inference of discrimination. Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 241-42 (4th Cir. 1982). Speculative assertions that a defendant's or a person's motivation was unlawful is not enough to withstand summary judgment, Goldberg v. B. Green and Co., 836 F.2d 845, 848 (4th Cir. 1988); and conclusory statements will not satisfy plaintiff's burden in responding to the motion for summary judgment. Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp., 828 F.2d 211 (4th Cir. 1987). Unsupported allegations "do not confer talismanic immunity from Rule 56." Ross v. Communications Satellite Corp., 759 F.2d 355, at 365 (4th Cir. 1985). Plaintiff's allegations of discriminatory animus in his supervision are clearly speculative. A court cannot allow a jury to decide issues based on speculation. Fed.R.Evid. 401 & 602.

Finding that no genuine issues of material fact remain for trial, the undersigned is compelled to recommend that defendant's Motion for Summary Judgment be granted and that this action be dismissed with prejudice.

## RECOMMENDATION

**IT IS, THEREFORE, RESPECTFULLY RECOMMENDED** that defendant's Motion for Summary Judgment (#10) be **ALLOWED**, and

(1)    plaintiff's first, third, and fifth causes of action be **DISMISSED** with prejudice as time barred;

(2)    plaintiff's second, fourth, and sixth causes of action be **DISMISSED** with prejudice as plaintiff has failed to make out a *prima facie* case under any of those causes of action; and

(3)    in the alternative to recommendation (1), that the first, third, and fifth causes of action be **DISMISSED** with prejudice as plaintiff has failed to make out a *prima facie* case under any of those causes of action

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(C), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within ten (10) days of service of same. Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986); United

States v. Schronce, 727 F.2d 91 (4th Cir.), cert. denied, 467 U.S. 1208 (1984).

Signed: November 7, 2008

Dennis L. Howell
United States Magistrate Judge